UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| WALSH CONSTRUCTION COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:17-cv-00160-DML-SEB |
| | ) | |
| ADVANCED EXPLOSIVES DEMOLITION, | ) | |
| INC., JERRY KEITH, and | ) | |
| PREMIER ENGINEERING, INC., | ) | |
| | ) | |
| Defendants. | ) | |

# Order on Defendant AED's Motion to Dismiss
# or, Alternatively, for More Definite Statement

Defendant Advanced Explosives Demolition, Inc. ("AED") moved to dismiss the plaintiff's complaint on the grounds that the claims are barred by the economic loss rule or the statute of limitations. In its reply brief, to which the court allowed plaintiff Walsh Construction Company to file a surreply, AED raised another ground for dismissal—lack of constitutional standing. In the alternative to these dismissal arguments, AED asks the court to order Walsh to provide a more definite statement of its claims.

AED's motion is denied because (1) plaintiff Walsh Construction has standing; (2) the economic loss rule and statute of limitations arguments are not resolvable in this case on a motion to dismiss; and (3) Rule 12(e) "more definite statement" relief is inappropriate and unnecessary.

## The Complaint

Walsh Construction's complaint alleges that under a contract with the Indiana Department of Transportation, it built a new bridge between Milton, Kentucky and Madison, Indiana (the "New Milton-Madison Bridge" or "New Bridge"). The New Bridge was built adjacent to the existing or "old" Milton-Madison Bridge. At some point, Walsh Construction entered into a contract with a company named Omega Demolition to "perform, among other services, explosive demolition services in connection with" Walsh's New Bridge construction project. Omega, in turn, contracted with AED to perform explosive demolition services for the removal of the Old Milton-Madison Bridge. *See* Complaint, Dkt. 1, ¶¶ 7-8. During AED's explosive demolition work on the Old Bridge on certain days in July, August, and September 2013, "flying shrapnel struck the new adjacent Milton-Madison Bridge causing indentation/gouges of the Bridge's structural members and paint chipping." *Id.*, ¶ 10.

Walsh asserts it suffered damages from AED's conduct because Walsh had to repair the resulting physical damage to the New Bridge. Walsh seeks relief under a negligence theory (AED "negligently managed, operated, used, controlled, conducted, and carried out its" explosive demolition and negligently failed to control the premises so as not to damage the New Bridge, complaint, ¶ 16), a negligence per se theory based on AED's alleged failure to comply with the Explosive Materials Code, a set of guidelines adopted as part of Indiana's Fire Prevention Code (*id.,* ¶¶

20, 24), and a "strict liability" theory based on AED's engaging in an ultra-hazardous activity. (*Id.,* ¶ 12).

## AED's Motion to Dismiss

AED's motion to dismiss raises three arguments: (1) that Walsh lacks standing; (2) that the economic loss rule bars relief; and (3) that Walsh's claims are barred by the statute of limitations. The court addresses first the statute of limitations and standing arguments because Walsh's response to AED's statute of limitations contention caused AED to assert in its reply brief that Walsh lacks standing. The court will then address the economic loss rule argument.

**I.** **AED is not entitled to dismissal based on the statute of limitations.**

Dismissing a complaint based on a statute of limitations affirmative defense is unusual because a complaint need not plead around an affirmative defense, but it is appropriate to do so when the complaint alleges facts "sufficient to establish the complaint's tardiness." *Cancer Foundation, Inc. v. Cerberus Capital Mgmt., L.P.,* 559 F.3d 671, 674 (7th Cir. 2009). The complaint alleges that the damages caused by AED's demolition work occurred in July, August, and September 2013. There is no suggestion that any cause of action against AED accrued any later than the time of this work. Walsh Construction filed its complaint on August 28, 2017, around four years after the work complained of.

In its opening brief, AED argued that Walsh Construction's claims are governed either by Indiana's two-year statute of limitations for injuries to personal property, Ind. Code § 34-11-2-3, or Kentucky's one-year statute of limitations

3

governing claims in contract and tort arising out of alleged acts or omissions in rendering professional services, Ky Stat. § 413.245.[1] If AED is right that one of these statutes applies as a matter of law, then the court could agree that the complaint alleges facts sufficient to establish its tardiness. But Walsh Construction asserts that its claims are governed by Indiana's six-year statute of limitations at Ind. Code § 34-11-2-7(3), governing actions "for injuries to property other than personal property. . . ." It argues that its claims seek recovery for injuries to the New Bridge, and the New Bridge is considered to be real property, not personal property, and thus fall within the six-year limitations statute.

In reply, AED asserts that the claim for damages to the New Bridge cannot be considered a claim for injuries to real property because, supposedly, "Indiana rejects Plaintiff's characterization of repair damages as real property damage." Dkt. 29 at p. 2. The only authority cited by AED to support this assertion is an economic loss rule case, *Indianapolis-Marion County Public Library v. Charlier Clark & Linard, P.C.,* 929 N.E.2d 722, 732 (Ind. 2010). *Public Library*'s discussion about whether certain losses were "property" losses concerned whether the Library had suffered injury to "other property" in the context of the economic loss rule. The case has nothing to do with a statute of limitations. *Public Library* never mentions the injury to real property statute of limitations in Ind. Code § 34-11-2-7(3), or any

---

[1] The parties do not address conflicts of law issues. The court makes no ruling here that Indiana law or Kentucky law applies.

4

other statute of limitations. It thus provides no insight into whether this six-year statute of limitations should apply.

It is not obvious to the court that Walsh is wrong that its claims to recover for repairs to the New Bridge is an action for injury to real property within the meaning of Ind. Code § 34-11-2-7-(3). AED does not counter Walsh's assertions that the New Bridge is "property other than personal property" or that Walsh is seeking to recover for an injury to the New Bridge. It may be that later in this case, a more developed factual record will point to the application as a matter of law of a particular limitations period, but AED has not yet demonstrated that the six-year statute of limitations relied on by Walsh cannot apply. The court therefore DENIES AED's request that the court dismiss Walsh's claims against it on statute of limitations grounds.

## II. <u>Walsh Construction has standing.</u>

In response to Walsh's contention that the New Bridge is real property and thus its causes of action are governed by the six-year statute of limitations applicable to actions "for injuries to property other than personal property," AED contends that Walsh Construction lacks standing because "Walsh has provided no factual support that it owned an interest in the allegedly damaged property" and therefore could not have suffered an injury in fact. AED has cited no authority for the proposition that Walsh has standing only if it alleges, and then proves, that it was an "owner" of an "interest" (presumably, AED means a property interest) in the New Bridge.

Standing is an aspect of the "case or controversy" requirement under Article III of the United States Constitution and it asks, in general terms, whether the plaintiff has a "vested interest in the case." *Cabral v. City of Evansville,* 759 F.3d 639, 641 (7th Cir. 2014). A plaintiff has standing if it establishes:

(1) that it suffered an "injury in fact";

(2) a causal connection between the injury in fact and the alleged improper conduct by the defendant; and

(3) that the injury would likely be redressed by a favorable result in the case.

*Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992).

Walsh Construction's complaint meets these elements. Its complaint is grounded in the theory that in its capacity as the contractor of the New Bridge, it was required to (and did) spend money to make repairs to the New Bridge (the "injury in fact") to fix damage caused by AED's alleged deficient conduct. The injury could be redressed by a damages judgment if Walsh is successful in proving its claims. The court therefore rejects the standing argument raised by AED.

### III. AED has not shown that the economic loss rule definitively bars relief.

AED contends that the Indiana Supreme Court's shaping of the economic loss rule in *Indianapolis-Marion County Public Library,* 929 N.E.2d 722 (Ind. 2010), bars Walsh Construction's tort claims. The problem with AED's argument is that the complaint itself does not allege facts sufficient for the court to decide the issue on a motion to dismiss. *Public Library* was decided on summary judgment, a very different posture.

The economic loss rule, as explained in *Public Library,* is that contract law, and not tort law, governs a plaintiff's action seeking purely pecuniary loss against a supplier of products or services based on claims that it supplied substandard products or services. 929 N.E.2d at 726-27. Pure pecuniary loss does not include claims for personal injuries or claims for damages to "other property"; that is, property not considered part of the contracted-for "property." *Id.* at 727. Determining whether a plaintiff is seeking recovery for damages to "other property" or whether his alleged damages arise instead from a "single property" transaction can be a difficult task that depends on the nature of the relationships between the parties and any governing contracts. *See id. at* 730-32 (addressing the "other property" aspect of the rule). Further, even if a plaintiff's claims are not for personal injuries or for damages to "other property," other exceptions to the economic loss rule may apply to a particular fact pattern. The Indiana Supreme Court stated:

> [W]e emphasize . . . that the economic loss rule has limits, that while it operates as a *general rule* to preclude recovery in tort for economic loss, it does so only for *purely* economic loss—pecuniary loss unaccompanied by any property damage or personal injury (other than damage to the product or service provided by the defendant)—and even when there is purely economic loss, there are exceptions to the general rule.

*Id.* at 730 (emphasis in original).

Walsh Construction contends that the New Bridge was "other property" from the "Old Bridge" for which AED provided blasting services and therefore the economic loss rule does not bar its tort claims. While AED asserts that the New

7

Bridge and Old Bridge must be viewed as an integrated, single "property," the court cannot make that determination on the basis of the complaint. No contracts are attached to the complaint, and there is insufficient information about the nature of the relationships among the parties, the contents of relevant contracts, and the construction activities for the New Bridge and the demolition of the Old Bridge for the court to decide whether the economic loss rule applies or whether an exception should be recognized. More factual development is necessary. *Cf. Community Bank of Trenton v. Schnuck Markets, Inc.,* 887 F.3d 803, 821 (7th Cir. 2018) (in deciding on motion to dismiss that economic loss rule barred claims, court emphasized that "we know enough about the [relevant] agreements in our record for them to inform our analysis").

Walsh contends further that because AED allegedly breached duties in conducting its blasting demolition activities independent of contract requirements—the duties of care supplied by the Explosive Materials Code and incorporated into Indiana's Fire Prevention Code—the economic loss rule does not apply. In response, AED argues that for such an exception to apply, Walsh must first show that there is a private right of action to enforce the Explosive Materials Code incorporated into the Fire Prevention Code. AED has cited no authority for the proposition that a private right of action is necessary to except a loss from the reach of the economic loss rule. AED merely states, "Plaintiff's negligence *per se* claim does not create an independent duty, so economic loss doctrine remains as a bar to the Plaintiff's claim. The court has no subject matter jurisdiction over the negligence *per se* claim

8

because there is no private right of action." Dkt. 29 at p. 7. The court does not follow this logic. A negligence *per se* claim is not a claim that a plaintiff has a private right of action under a particular statute. It is a claim that a statute establishes a standard of conduct that a defendant owes to a particular category of plaintiffs, and that if the defendant breached that standard of conduct, the defendant is liable to the plaintiff as a matter of common law negligence. *See, e.g., Cook v. Whitsell-Sherman,* 796 N.E.2d 271, 275-76 (Ind. 2003) (describing the basic contours of a negligence *per se* claim).

The court does not purport to rule that Walsh's negligence *per se* theory can survive as an exception to the economic loss rule. It decides only that AED has not established that the negligence *per se* theory is not available as a matter of law.

Further, under some states' laws, there is an exception to the economic loss rule for "property damage resulting from sudden or dangerous conditions." *Community Bank,* 887 F.3d at 813 (addressing exceptions under Illinois law). While the court does not purport to address the contours of this exception or whether it could apply to this case, the court notes that one of Walsh's theories is that AED is "strictly liable" because it was engaged in "ultra-hazardous activity." Complaint, ¶ 12.

In short, the court cannot decide as a matter of law and based solely on the complaint's allegations that Indiana's economic loss rule bars relief. It is possible that targeted discovery will flesh out the facts relevant to this theory.

## IV. The court denies AED's request for Rule 12(e) relief.

In the alternative to its request that the court dismiss Walsh's complaint, AED asks it to order Walsh to make more specific statements in its complaint about the facts that support its legal theories. Rule 12(e) allows the court to grant a motion for more definite statement when the "pleading . . . is so vague or ambiguous that the [moving] party cannot reasonably prepare a response" to the pleading. It is not a vehicle to transform the rules of procedure into a code-pleading regime. *Chapman v. Yellow Cab Cooperative,* 875 F.3d 846, 849 (7th Cir. 2017). Walsh's complaint is not vague or ambiguous; it gives fair notice to AED about the nature of the conduct complained of and when it occurred, sufficient to permit AED to prepare an answer. *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC,* 499 F.3d 663, 667 (7th Cir. 2007) (Rule 8 requires only that complaint gives the defendant fair notice of what the claim is and the grounds on which it rests).

## Conclusion

For the foregoing reasons, AED's motion to dismiss or, in the alternative, for more definite statement (Dkt. 20) is DENIED.

So ORDERED.

Dated: May 22, 2018

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record by email through the court's ECF system